IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02106-PAB-CBS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

927 COLE STREET, GOLDEN, COLORADO, and
2008 TOYOTA HIGHLANDER, VIN # JTEES42A182076495,

    Defendants.

_____

**MOTION FOR SUMMARY JUDGMENT**
_____

The United States of America, by and through Attorney General of the United States Eric Holder, Barry R. Grissom, United States Attorney for the District of Kansas, and through Special Attorney, Assistant United States Attorney Tonya S. Andrews, respectfully moves this Court, pursuant to the provisions of Fed. R. Civ. P. 56, for Summary Judgment against Defendant 927 Cole Street, Golden, Colorado ("defendant Cole Street"). In support thereof, the United States submits the following memorandum of law:

**MEMORANDUM OF LAW**

The United States files this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and in accordance with D.C.COLO.LCivR. 56.1. The United States asserts it is entitled to summary judgment for the following two reasons:

    (1) The United States has established by a preponderance of the evidence that defendant Cole Street is subject to forfeiture pursuant to 18 U.S.C. §§

1

981(a)(1)(A) and (a)(1)(C), because it is property involved in money laundering and was purchased with proceeds obtained through mail and wire fraud[1]; and

(2) Claimant George Magnani interest in defendant Cole Street does not meet the innocent owner provisions set forth in 18 U.S.C. § 983(d).

## JURISDICTION AND VENUE

The United States has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. § 981, seeking forfeiture of the defendant property as proceeds of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, transportation of stolen goods, securities and moneys in violation of 18 U.S.C. § 2314, and property involved in money laundering in violation of 18 U.S.C. §§ 1956 and 1957. The Court has jurisdiction and venue pursuant to 28 U.S.C. §§ 1345 and 1355.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Richard and Marie Dalton's Fraudulent Ponzi Scheme

1.      Beginning in 2007, Richard Dalton owned and operated a company called Universal Consulting Resources, LLC ("UCR"); a New Mexico limited liability company. Richard Dalton and Marie Dalton were married and UCR was their only source of income. (Plea Agreement Marie Dalton, Criminal Case No. 11-cr-00430-CMA, Doc. 156, p. 4) (herein "Exhibit 1"); *see also* (Plea Agreement Richard Dalton, Criminal Case

---

[1] Proceeds obtained as a result of Mail and Wire Fraud are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). Section 981(a)(1)(C) applies to any "specified unlawful activity," as set forth in 18 U.S.C. § 1956(c)(7). A "specified unlawful activity" means "any act or activity constituting an offense listed in [Title 18, United States Code] section 1961(1)." 18 U.S.C. § 1956(c)(7)(A). Title 18, United States Code, Section 1961(1), lists Mail and Wire Fraud; therefore, they are specified unlawful activities, making 18 U.S.C. § 981(a)(1)(C) applicable in this case.

No. 11-cr-00430, Doc. 159);[2] (Verified Complaint For Forfeiture *In Rem*, August 11, 2011, Doc. 1 ¶ 10) (herein "Doc.1").

     2.    Richard Dalton was the owner of UCR and Marie Dalton served as UCR's bookkeeper. UCR was operated from the Dalton's home at 927 Cole Street in Golden, Colorado. (Exhibit 1, p. 4, 5).

     3.    UCR and Richard and Marie Dalton solicited investors to purchase interests in investment contracts, referred to as either the "Trading Program," or the "Diamond Program." (Exhibit 1, p. 4).

     4.    The Trading Program was started in approximately 2007, and the Diamond Program began approximately in 2009 (herein "Programs"). The Trading Program purported to trade "Financial Instruments" whereas the Diamond Program, expanded its trading to "precious stones." (Exhibit 1, p. 4, 5).

     5.    To participate in the Programs, investors signed an "Investment Structure Agreement." It stated that investors' money would be placed in an escrow account and transferred to UCR's trading accounts as needed. The agreement also stated that the escrow account would receive the profits from the investments. (Exhibit 1, p. 4).

     6.    Richard and Marie Dalton made the following false or misleading statements via telephone, e-mail, facsimile, and the United States Mail to investors regarding UCR:

         a.    returns between 48%-120% were guaranteed annually;

---

[2] Both Richard and Marie Dalton's Plea Agreements have identical stipulations of facts. To avoid duplication, the government submits only Marie Dalton's plea agreement as an exhibit.

    b. monthly returns would be paid to investors from the note and diamond trading;

    c. the investment schemes were low risk;

    d. investors' money could be returned at any time;

    e. UCR accounts were evaluated by top professional and licensed third-party services;

    f. invested funds would be held in an escrow account at a bank in the United States; and

    g. a "European Trader" would use the value, but not the actual funds, of the UCR account to obtain leveraged funds to purchase and sell bank notes.  (Exhibit 1, p. 5); (Doc. 1 ¶¶ 13, 23-27, 36).

  7. The Investment Structure Agreement also assured investors that "[a]n investor can cancel this Agreement at any time and request that all money as principal investment and all other proceeds from profits be returned."  (Exhibit 1, p. 4); (Doc. 1 ¶ 33(c)).

  8. When an investor deposited funds with UCR, those funds were deposited into UCR's Bank of America bank account XXXXXXXX4794 ("UCR bank account"), and the checks for purported profit payments were also made out of this account and sent by the United States Mail.  (Exhibits 1, p. 5); (Doc. 1 ¶ 37).

  9. Richard and Marie Dalton both had signatory authority over this account.  (Exhibit 1, p. 5).

10. Investor funds of approximately $17,000,000.00 from investors in 13 states and five foreign countries were made to UCR. (Exhibits 1, p. 5); (Doc. 1 ¶ 4).

11. Despite the statements made to investors by Richard and Marie Dalton regarding the nature of UCR's business, UCR was, in fact, a Ponzi scheme. (Exhibit 1, p. 5).

12. The UCR account held commingled funds from investors and newer investors' funds were used to pay earlier investors their purported "profits." (Exhibit 1, p. 5); (Doc. 1 ¶¶ 20, 22).

13. On November 16, 2010, the Securities and Exchange Commission ("SEC") filed a formal action against Richard Dalton and UCR in the District of Colorado. (Exhibit 1, p. 8); (Doc. 1 ¶ 9).

14. The next day, the SEC recorded in the records of Jefferson County, Colorado its Notice of Lis Pendens against defendant Cole Street. (Exhibit 2).

15. Based on their criminal conduct, on October 19, 2011, Richard and Marie Dalton were charged in a nineteen count indictment with Wire Fraud, Mail Fraud, Money Laundering and Conspiracy in the District of Colorado in Criminal Case Number 11-cr-00430-CMA. (Indictment, Criminal Case No. 11-cr-00430, Doc. 14).

16. On February 21, 2013, Marie Dalton pleaded guilty to Count One of the Indictment charging a violation of 18 U.S.C. § 371, Conspiracy to Commit Mail Fraud, Wire Fraud, and Money Laundering. (Exhibit 1). She was sentenced on June 10, 2013, to a term of sixty-months imprisonment. (Judgment, Criminal Case No. 11-cr-00430, Doc. 214).

17. That same day Richard Dalton pleaded guilty to Money Laundering in violation of 18 U.S.C. § 1957. (Plea Agreement Richard Dalton, Criminal Case No. 11-cr-00430, Doc. 159). He was sentenced on June 10, 2012, to a term of 120-months imprisonment. (Judgment, Criminal Case No. 11-cr-00430, Doc. 213).

18. Richard and Marie Dalton both agreed to the forfeiture of defendant Cole Street in their Plea Agreements. (Exhibits 1, p. 11-14); (Plea Agreement Richard Dalton, Criminal Case No. 11-cr-00430, Doc. 159, p. 11-14).

19. On September 24, 2013, Richard and Marie Dalton were ordered to pay restitution in the amount of $4,504,161.00 to their victims. (Sept. 24, 2013 Minute Order, Criminal Case No. 11-cr-00430).

### B. Purchase of Defendant Cole Street with Investor Funds

20. Richard and Marie Dalton used investor funds to pay for personal items, including defendant Cole Street for $936,000.00. (Exhibit 1, p. 6); (Doc. 1 ¶ 44).

21. On May 22, 2009, Richard and Marie Dalton wire transferred $25,000.00 from the UCR account to an account that they held at Wells Fargo Bank. *See* UCR Bank Account Statement, May 2009 (herein "Exhibit 3").

22. That same day, the Daltons provided an earnest money cashier's check in the amount of $20,000.00 to Guardian Title Company from their Wells Fargo Bank account. (Exhibit 4).

23. On July 2, 2009, a wire transfer occurred in the amount of $910,298.08 from Arcanum Commodities Group's account at Liechtensteinische Landesbank in Zurich, Switzerland to Colorado to purchase defendant Cole Street. (Exhibit 1, p. 6-7);

Guardian Title Comerica Report, dated July 2, 2009 (herein "Exhibit 5"); *see also* Arcanum Statement, July 31, 2009 (herein "Exhibit 6") (noting a withdrawal of $910,356.44, an amount which included wire transfer fee charges); (Doc. 1 ¶ 58).

24. Prior to the July 2, 2009 transfer, UCR and Richard and Marie Dalton used investor funds from UCR's bank account to invest in a hedge fund called Arcanum Equity Fund, LLC. On April 22 and 23, 2008, two wire transfers from UCR's bank account, totaling $1,000,000.00, were made to Arcanum Equity Fund's account in Singapore. (Exhibit 1, p. 6); *see also* UCR Bank Account Statement, April 2008 (herein "Exhibit 7"); Deutcsche Bank Funds Transfer Credit Advice, dated April 23, 2008 (herein "Exhibit 8"); Deutcsche Bank Funds Transfer Credit Advice, dated April 24, 2008) (herein "Exhibit 9"); (Doc. 1 ¶ 50). Arcanum Equity Fund also owns Arcanum Commodities Group, Inc. which has accounts in Zurich, Switzerland. (Doc. 1 ¶¶ 55, 56).

25. Defendant Cole Street is currently titled in Marie Dalton's name. (Exhibit 10).

### C. Civil Forfeiture and State Court Actions

26. On May 12, 2011, George Magnani filed a Complaint against Marie Dalton in the District Court of Jefferson County, Colorado, based upon the Daltons' Ponzi scheme and his $100,000.00 investment with UCR. (Exhibit 11, ¶¶ 4-16).

27. On August 11, 2011, the Government filed its Verified Complaint for Forfeiture *In Rem* against defendants Cole Street and a 2008 Toyota Highlander VIN # JTEES42A182076495.[3] (Doc. 1).

28. On August 18, 2011, the Government also recorded its Notice of Lis Pendens against defendant Cole Street in Jefferson County, Colorado, in relation to this action. (Exhibit 12).

29. On November 18, 2011, Jefferson County District Court Judge Dennis J. Hall granted Default Judgment against Marie Dalton. George Magnani was awarded $910,356.44 in damages, which included his initial investment of $100,000.00 with UCR, plus twenty percent monthly interest from December 12, 2009 to December 12, 2010, for a total amount of $910,356.44. In addition, the court ordered post-judgment interest and attorneys' fees and costs. (Exhibit 13, ¶¶ 4, 7-8).

30. On December 1, 2011, the Government recorded a second Notice of Lis Pendens against defendant Cole Street. (Exhibit 14).

31. On December 12, 2011, George Magnani had his Transcript of Judgment recorded in Jefferson County, Colorado. (Exhibit 15).

32. On April 12, 2012, George Magnani filed a verified claim in this civil forfeiture action. He asserts his interest in defendant Cole Street based upon the state court judgment he received against Marie Dalton. (Doc. 47, ¶ 3).

---

[3] The Toyota Highlander is no longer at issue in this case, because on February 5, 2013, the Court entered default and issued a Final Order of Forfeiture for that defendant asset. (Doc. 63).

33.     Both Richard and Marie Dalton have consented to the forfeiture of the defendant Cole Street in this civil forfeiture action.  (Docs. 39, 75).

34.     No other parties have filed claims in this action.

## IV.  ARGUMENT AND CITATION OF AUTHORITY

### A.     STANDARDS OF PROOF

#### 1.     The Standard For Granting Summary Judgment

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine factual dispute exists when a "reasonable jury could return a verdict for the nonmoving party."  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact means that the fact is "essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citation omitted).  In other words, the fact must "affect the outcome" of the lawsuit to be deemed "material."  *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden to establish the basis for summary judgment, and identify those portions of the record which the movant believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the movant bears the burden of proof at trial, it is required to support its motion for summary judgment with the same evidence that would "establish its right to a judgment after trial if the nonmovant were to fail to rebut the evidence."  *United States v. $13,000.00 in U.S. Currency*, 858 F. Supp. 2d 1194, 1197

(D. Colo. 2012) (explaining the summary judgment standard in the context of a civil forfeiture action).

Once the movant meets its burden of proof, the burden then shifts to the nonmoving party to show that there is an actual issue of material fact regarding an element that the movant must prove. See *Anderson*, 477 U.S. at 256. The nonmoving party cannot rely on the pleadings alone, but must show by affidavits, depositions, answers to interrogatories, or admissions that there are specific facts demonstrating that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. In sum, the nonmoving party must present "'sufficient evidence in specific, factual form for a jury to return a verdict' in the nonmovant's favor." *$13,000.00 in U.S. Currency*, 858 F. Supp. 2d at 1197-98 (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.3d 887, 891 (10th Cir. 1991)).

## 2.   The Burden of Proof In Civil Forfeiture

The Government is entitled to summary judgment in a civil forfeiture case when the undisputed facts establish by a preponderance of the evidence that defendant property is subject to forfeiture. 18 U.S.C. § 983(c)(1). The "preponderance of the evidence" burden is established when the "relevant facts are more likely true than not." *United States v. Two Real Properties Situated in Blue-Field,* No.1:06-0532, 2009 WL 3181453, at *3 (S.D.W. Va. Sept. 29, 2009) (unpublished) (citation and quotation omitted); *see also Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993) (the preponderance standard requires proof that a fact is more probable than not). Therefore, the government must demonstrate that it is more

likely true than not that defendant Cole Street is subject to forfeiture.  *See $13,000.00 in U.S. Currency*, 858 F. Supp. 2d at 1200 ("the Court determines it is more likely than not that the Defendant $13,000 came from drug trafficking.").

>   **B.   The Undisputed Facts Establish by a Preponderance of the Evidence that Defendant Cole Street is Forfeitable Pursuant to 18 U.S.C. § 981 as Proceeds Traceable to Mail Fraud, Wire Fraud and Property Involved in Money Laundering**

Defendant Cole Street is subject to forfeiture because it was purchased with investor funds obtained through UCR and the Daltons' illegal Ponzi scheme and was also property involved in money laundering.  First, UCR and the Daltons were operating a scheme to defraud investors.  They made oral and written misrepresentations to potential investors about the nature of the investment programs offered by UCR using various means, including email and the United States Mail. (Exhibit 1, p. 5); (Doc. 1 ¶¶ 13, 23-27, 36).  Based on their misrepresentations, investors gave the Daltons and UCR over $17 million dollars.  (Exhibit 1, p. 5); (Doc.1 ¶ 4).  The Daltons then commingled those investors' funds in UCR's bank account controlled exclusively by them.  (Exhibit 1, p. 5).  Based on this illegal conduct, Marie Dalton pleaded guilty to Conspiracy to Commit Mail Fraud, Wire Fraud, and Money Laundering and Richard Dalton pleaded guilty to Money Laundering.  (Exhibit 1); (Plea Agreement Richard Dalton, Criminal Case No. 11-cr-00430, Doc. 159).

Investor funds from UCR's bank account were then used to purchase defendant Cole Street for the benefit of the Daltons. (Exhibit 1, p. 6); (Doc. 1 ¶ 44).  On May 22, 2009, the Daltons wired fraudulently obtained investor funds in the amount of $25,000.00 from UCR's bank account to their account at Wells Fargo Bank.  (Exhibit 3).

11

The Daltons then provided an earnest money cashier's check to Guardian Title Company the same day in the amount of $20,000.00 issued from their Wells Fargo account. (Exhibit 4). In addition, the Daltons had over $1,000,000.00 of illegally obtained investor funds wired from UCR's bank account to Arcanum Equity Fund's account in Singapore to invest in the Arcanum hedge fund. (Exhibit 1, p. 6); (Exhibits 7, 8, and 9); (Doc. 1 ¶ 50). In turn, on July 2, 2009, the Daltons had $910,298.08 of the $1,000,000 from their Arcanum Equity Fund investment account wired to Colorado to pay for defendant Cole Street. (Exhibit 1, p. 6-7); (Exhibits 5, 6); (Doc. 1 ¶ 58).

All of the funds used to purchase defendant Cole Street were directly traceable to investor funds obtained through Mail Fraud and Wire Fraud. Furthermore, defendant Cole Street is also property involved in Money Laundering, because it was purchased with illegally obtained investor funds in a financial transaction over $10,000.00. Therefore, defendant Cole Street should be forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

### C.  Claimant George Magnani Does Not Qualify As An Innocent Owner Under 18 U.S.C. § 983(d)

Once the government establishes that the property is subject to forfeiture, a claimant may only avoid the forfeiture of the property if they can prove they are entitled to it as an innocent owner by a preponderance of the evidence. 18 U.S.C. § 983(d)(1) ("[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute."); *see e.g. United States v. 16328 South 43rd East Ave.*, 275 F.3d 1281, 1284-1285 (10th Cir. 2002). Under 18 U.S.C. § 983(d), a claimant must show that they had an interest in the property before the government's interest vested or they acquired the

12

property as a bona fide purchaser for value. 18 U.S.C. § 983(d)(2)-(3). In this case, claimant Magnani cannot establish either.

### 1. Claimant Magnani's Property Interest in Defendant Cole Street Was Established After the Government's Interest Vested

First, 18 U.S.C. § 983(d)(2) applies to owners who have a pre-existing ownership interest in the property subject to forfeiture. To use this provision, a claimant must establish their interest in the property was "in existence at the time the illegal conduct giving rise to forfeiture" occurred, because the government's interest vests "upon commission of the act giving rise to forfeiture." 18 U.S.C. §§ 981(f), 983(d)(2)(A); *see also United States v. Gordon,* 710 F. 3d 1124, 1135 n.13 (10th Cir. 2013) (explaining that title vests with the government upon the commission of the acts giving rise to forfeiture). This is known as the relation-back doctrine. Claimant Magnani cannot meet the temporal requirement of Section 983(d)(2), because he had no interest in the property until he recorded his judgment on December 12, 2011, two years after the Dalton's purchased defendant Cole Street with fraudulently obtained funds. (Exhibit 15). The government's interest, however, vested on July 2, 2009, the date of purchase. (Exhibits 1, p. 6-7); (Exhibits 5, 6); (Doc. 1 ¶ 58). Thus, Section 983(d)(2)(A) is inapplicable to claimant Magnani's interest in this case.

### 2. Claimant Magnani is Not a Bona Fide Purchaser For Value Without Reason to Know that Defendant Cole Street Was Subject to Forfeiture

Second, claimant Magnani cannot establish innocent ownership under Section 983(d)(3) either. The second innocent owner provision addresses a claimant whose interest in the property was "acquired after the conduct giving rise to the forfeiture" had

occurred. 18 U.S.C. § 983(d)(3)(A). The statute also requires that a claimant prove that: (1) they were a bona fide purchaser for value; and (2) the claimant did not know, and was reasonably without cause to believe that the property was subject to forfeiture, to establish innocent ownership. 18 U.S.C. § 983(d)(3)(A)(i)-(ii). Claimant Magnani's interest fails on both accounts.

### a. Claimant Magnani Does Not Meet the Definition of Bona Fide Purchaser for Value

Claimant Magnani does not qualify as a bona fide purchaser. Although bona fide purchase for value is not defined in 18 U.S.C. § 983, a bona fide purchaser 'includes all persons who give value . . . in an arm's length transaction with the expectation that they would receive equivalent value in return.'" *United States v. Munson*, 477 Fed. App'x 57, 67 (4th Cir. 2012) (unpublished); *accord United States v. One 1996 Vector M12*, 442 F. Supp. 2d 482, 486 (S.D. Ohio 2005). A judgment lien creditor who has a lien on a property cannot be a bona fide purchaser for value, because no value is exchanged. *See* Stefan D. Cassella, *The Uniform Innocent Owner Defense to Civil Asset Forfeiture*, 89 K.Y. L.J. 653, 694 (2001). The judgment is "merely a vehicle to collect" on a preexisting debt. *United States v. Unit H-310 Apusento Garden*, No. 07-00006, 2011 WL 3715283, at * 5 n. 7 (D. Guam Aug. 24, 2011) (unpublished) (explaining the inapplicability of innocent ownership under 18 U.S.C. § 983(d)(3)(A)(i) to judgment lien creditors). To obtain a judgment, a creditor exercises their right to bring a cause of action for breach of contract. If successful, the judgment creditor may record their judgment as a lien against property of the judgment debtor based on the damages

awarded in the breach of contract case. However, the judgment creditor is not awarded an interest in the forfeitable property. *See* Cassella, 89 K.Y. L.J. at 693-695.

Here, claimant Magnani, based upon the Daltons' illegal conduct and his investment with UCR, obtained an *in personam* judgment against Marie Dalton in Colorado State District Court. (Exhibits 11, 13, and 15). The court did not grant him an interest in defendant Cole Street, nor did claimant Magnani purchase an interest in defendant Cole Street. He recorded his judgment based on awarded damages against Marie Dalton. (Exhibit 15). Therefore, claimant Magnani did not give "value . . . in an arm's length transaction with the expectation that [he] would receive equivalent value in return." *Munson*, 477 Fed. App'x at 67. He is not a bona fide purchaser for value, because his judgment lien is only a vehicle to collect on a debt owed to him by Marie Dalton. *See Unit H-310 Apusento Garden*, No. 07-00006, 2011 WL 3715283, at * 5 n. 7.

### b. Claimant Magnani Had Knowledge that Defendant Cole Street was Subject to Forfeiture

Claimant Magnani cannot establish that he was without reason to know that defendant Cole Street was subject to forfeiture either. Before his action was ever filed in state court, the SEC had filed its formal action against Richard Dalton and UCR on November 16, 2010, and had recorded its Notice of Lis Pendens against defendant Cole Street. (Exhibits 1, 2, p. 8); (Exhibit 2). Claimant Magnani had knowledge that defendant Cole Street was subject to litigation because he explicitly references the SEC action in his Complaint. (Exhibit 11, ¶ 11). His Complaint also sets forth the facts supporting the forfeitability of defendant Cole Street, including the use of investor funds

15

to purchase defendant Cole Street and the underlying Ponzi scheme. (Exhibit 11, ¶¶ 5-16). Moreover, prior to his recorded judgment lien, the government had filed this civil forfeiture action and two Notices of Lis Pendens against defendant Cole Street. (Doc. 1); (Exhibits 12, 14). This gave notice to claimant Magnani that the property was subject to forfeiture. *See* § 38-35-110(1), C.R.S. ("From the time of recording, such notice of lis pendens shall be notice to any person thereafter acquiring . . . an interest in the real property"); *United States v. $3,124,977.24 in U.S. Currency*, 239 Fed. Appx. 335, 338 (9th Cir. 2007) (a claimant who acquires lien after the Government files notice of *lis pendens* has constructive notice of the forfeiture and thus cannot be an innocent owner under Section 983(d)(3)). In sum, claimant Magnani cannot establish that he was without reason to know that defendant Cole Street was subject to forfeiture when he recorded his judgment lien.[4]

### 3. Claimant Magnani's Interest is Subordinate to the Government's Interest in Defendant Cole Street

Assuming, *arguendo*, that claimant Magnani can establish innocent ownership under Section 983(d), his interest remains subordinate to the government's. An owner is defined as a person who has a "leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest" as recognized by the applicable state law.

---

[4] The government also maintains that allowing claimant Magnani, as a victim of the Ponzi scheme, to step ahead of other victims and obtain more funds than his actual investment in UCR would be inequitable. *See e.g. In re Foster*, 275 F.3d 924, 928 (10th Cir. 2001) (declining to extend an equitable remedy to a fraud victim when all fraud victims are similarly situated). The government has requested, and obtained preliminary approval from the United States Attorney General to use the forfeited properties in both the civil and criminal cases to restore funds to all of the victims identified in the restitution order on a pro rata basis.

18 U.S.C. § 983(d)(6)(A); *United States v. 904 Toro Canyon Rd.*, No. CIVA04CV02549EWN-OES, 2006 WL 36764, at *4 (D. Colo. Jan. 5, 2006) ("Ownership interest is determined under the law of the state in which the purported interest arose . . . ."); *see United States v. 392 Lexington Parkway South*, 386 F. Supp. 2d 1062, 1069 n. 10 (D. Minn. 2005) (state law determines the claimant's interest, "while federal law determines whether that interest is sufficient to defeat the Government's interest in the property under the federal forfeiture statute") (quoting Cassella, 89 K.Y. L.J. at 678). Thus, claimant Magnani does have a valid judgment lien interest in defendant Cole Street, which occurred on December 12, 2011, when he recorded his judgment in Jefferson County. (Exhibit 15).

Nonetheless, claimant Magnani's interest in defendant Cole Street is subordinate to the government's interest under Colorado state law because his judgment lien was recorded after the government's Notices of Lis Pendens were recorded. Colorado's title recording system is a "race-notice system." *Joondeph v. Hicks*, 235 P.3d 303, 306 (Colo. 2010). It only gives priority to "buyers who record their liens without notice of prior unrecorded conveyances or liens." *Id.* (citing § 38-35-109(1), C.R.S. (2009)). The purpose of the system is to "create[ ] certainty and predictability by 'enabl[ing] a buyer or mortgagee, by analysis of the chain of title, to determine exactly what it is acquiring.'" *Id.* (citing *Premier Bank v. Bd. Of County Comm'rs*, 214 P.3d 574, 579 (Colo. App. 2009)).

Both a lis pendens and a lien may be filed in the chain of title for real property. *See* § 38-35-109, C.R.S. (2010); § 13-52-102, C.R.S. (2013). A properly filed lis pendens serves as "notice to any person thereafter acquiring . . . an interest in the real

17

property . . . ." § 38-35-110(1), C.R.S. (2011).  Thus, when a lis pendens is recorded in the county where the real property is located, "anyone acquiring an interest in the property during the pendency of the litigation will be bound by its outcome . . . ." *Kerns v. Kerns*, 53 P.3d 1157, 1161 (Colo. 2002); § 38-35-110, C.R.S.

Here, all parties have properly recorded in Jefferson County where defendant Cole Street is located; therefore, there are no issues of priority for improperly filed or unrecorded conveyances, encumbrances, or liens in this case.   However, claimant Magnani's interest is subordinate to the government's interest.   Before claimant Magnani perfected his judgment lien, the SEC had filed a lis pendens on November 17, 2010, and the government had filed two lis pendens against defendant Cole Street on August 18, 2011 and December 1, 2011.[5]  (Exhibits 2, 12, 14).  All of the government's Notices of Lis Pendens relate and reference the illegal conduct by UCR and the Daltons.  Only after three Notices of Lis Pendens were recorded in Jefferson County, was claimant Magnani able to perfect his interest by recording his judgment lien on December 12, 2011.  (Exhibit 15).  Therefore, claimant Magnani's interest is last in the chain of title and priority.  In sum, he is bound by the determination that defendant Cole Street is forfeitable to the government because it was purchased with illegally obtained investor proceeds.

---

[5] Although the SEC litigation has been completed, United States District Judge Robert E. Blackburn issued an Amended Default Judgment stating, "That the property owned by Marie Dalton located at 927 Cole Street in Golden, Jefferson County, Colorado, **SHALL BE SOLD** as directed by the court in ***United States v. 927 Cole Street, Golden, Colorado, et al.***, Civil Action No. 11-cv-02106-PAB-CBS (D. Colo.)." *S.E.C. v. Universal Consulting Resources, et al*, 1:10-cv-02794-REB-KLM (D. Colo. Feb. 28, 2012) (Doc. 99).

## CONCLUSION

WHEREFORE, for all the reasons stated above, the government respectfully requests that the Court grant this motion for summary judgment and forfeit defendant Cole Street to the United States.

DATED this 24th day of October, 2013.

>Respectfully submitted,
>
>ERIC H. HOLDER, JR.
>ATTORNEY GENERAL OF THE UNITED STATES
>   &amp;
>BARRY R. GRISSOM, # 10866
>UNITED STATES ATTORNEY
>DISTRICT OF KANSAS
>barry.grissom@usdoj.gov
>
>By:
>
>s/ Tonya S. Andrews
>tonya.andrews@usdoj.gov
>Special Attorney
>1225 17th Street, Suite 700
>Denver, CO 80202
>Telephone: (303) 454-0210

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October, 2013, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notice to all counsel of record.

>s/ Tonya S. Andrews
>Special Attorney