## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02106-PAB-CBS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

927 COLE STREET, GOLDEN, COLORADO, et. al.

        Defendants.

_____

**CLAIMANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
_____

George Magnani ("Magnani" or "Claimant"), by and through his counsel Ogborn Mihm, LLP, submits the following Response to Motion for Summary Judgment:

### <u>INTRODUCTION</u>

The material facts in this case are largely, though not entirely, undisputed.  In order to narrow the issues for this summary judgment, Claimant does not dispute that the Government has established by a preponderance of the evidence that the defendant 927 Cole Street is *subject* to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C); however, Claimant maintains that he is entitled to avoid forfeiture of defendant 927 Cole Street because he obtained his interest as an innocent owner.  In the least, Claimant is entitled to a lien in favor of the Government in an amount sufficient to protect his interest in order to ensure he is paid the value of that interest.  For the foregoing reasons, Claimant requests this Court deny Plaintiff's Motion.

## <u>CLAIMANT'S RESPONSE TO PLAINTIFF'S UNDISPUTED FACTS</u>

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted in part.  Claimant asserts his interest in defendant Cole Street based on the judgment lien recorded against the subject property. (*See* Ex. 15 to Pl. Mot.)

33. Admitted.

34. Admitted.

## CLAIMANT'S ADDITIONAL LISTING OF UNDISPUTED FACTS

### *UCR & Daltons Bad Acts*

1.  Beginning in 2007, Richard Dalton owned and operated a company call Universal Consulting Resources, LLC ("UCR").  (*See* Pl. Mot. Summ. J. ¶ 1; Ex. 1 to Pl. Mot.)

2.  UCR and Richard Dalton obtained nearly $17,000,000.00 in investor funds through the Ponzi scheme. (*See* Pl. Mot. Summ. J. ¶¶ 10, 11; Ex. 1 to Pl. Mot.)

3.  In February, 2013, Richard Dalton plead guilty to money laundering.  In February, 2013, Marie Dalton plead guilty to conspiracy to commit mail fraud, wire fraud, and money laundering. (*See* Pl. Mot. Summ. J. ¶¶ 16, 17.)

### *Purchase of defendant 927 Cole Street*

4.  In approximately 2007, UCR and the Daltons solicited investors to purchase interests in investment contracts referred to as the "Trading Program." (*See* Pl. Mot. Summ. J. ¶ 4.)

5.  On April 22 and 23, 2008, UCR transferred $1,000,000.00 in funds from its bank account to Arcanum Equity Fund.  That $1,000,000 was obtained by UCR from investments in the Trading Program by victims of UCR's and the Dalton's Ponzi scheme. (*See* Pl. Mot. Summ. J. ¶ 24.)

6.  The Daltons used roughly $910,000 of that 2008 transfer to purchase 927 Cole Street.

7.  On May 22, 2009, UCR transferred $25,000 from its Bank of America account to the Daltons' personal Wells Fargo Account.  The Daltons then wrote a $20,000 check from the Wells Fargo account to Guardian Title for the purchase of 927 Cole Street. (*See* Pl. Mot. Summ. J. ¶¶ 21, 22.)

8.  On July 2, 2009, UCR/the Daltons transferred $910,298 from an Arcanum Commodities Group account in order to complete the purchase of 927 Cole Street.  Arcanum Equity Fund owns Arcanum Commodities Group. (*See* Pl. Mot. Summ. J. ¶ 23.)

9.  927 Cole Street was and is titled in Marie Dalton's name. (*See* Pl. Mot. Summ. J. ¶ 4; Ex. 10 to Pl. Mot.)

### *The "Diamond Program" and George Magnani's involvement*

10. At some point in 2009, UCR began a second investment program in order to generate additional Ponzi scheme funds.  UCR and the Daltons again solicited investors to purchase interests in investment contracts, this time referred to as the "Diamond Program." (*See* Pl. Mot. Summ. J. ¶ 3, 4.)

4

11. Claimant, George Magnani, learned of the Diamond Program from another investor who believed UCR and the Program were providing legitimate returns on investment. (*See* Magnani Summ. J. Aff. ¶ 1, attached hereto as Ex. A.)

12. As a result, Claimant entered into an Investment Structure Agreement (the "Agreement") and made a $100,000.00 investment in the Diamond Program on November 12, 2009—over four months after the Daltons' purchase of 927 Cole Street. (*See* Ex. A, ¶ 2; Ex. B.)

13. Pursuant to the terms of the Agreement, Magnani was to receive a minimum return on his investment of twenty-percent (20%) per transaction, paid monthly beginning in December of 2009.  The Agreement further provided for one transaction per month, thereby establishing a payment schedule of once per month. (*See* Ex. A, ¶¶ 3, 4; Ex. B.)

14. Claimant filed a Complaint in Jefferson County District Court in October, 2010, against Richard Dalton and UCR for breach of contract, breach of implied duty of good faith and fair dealing, civil theft, and breach of fiduciary duty, with alternative claims of fraud, after having received no return on his investment since December of 2009. (*See* Ex. A, ¶ 6; Ex. C., pp. 3-5.)

## *Legal Proceedings*

15. Subsequent to filing suit against Richard Dalton and UCR, Claimant learned of the allegations set forth in the Securities and Exchange Commission Complaint against Richard and Marie Dalton and UCR, which was filed on November 16, 2010. (*See* Ex. A, ¶8; Ex. D.)

16. The SEC action only sought "preliminary and permanent injunctions, disgorgement plus prejudgment and postjudgment interest, and civil penalties for violations of Sections 5(a),

5(c), and 17(a) of the Securities Act of 1933."  The Complaint sought no criminal relief. (*See* Ex. D, ¶ 5.)

17. Moreover, the SEC action never mentioned any involvement of Marie Dalton in the scheme; it only referenced the allegation that she "obtained money, property and assets as a result of the violations of the securities laws by UCR and Dalton" and sought to "disgorge all illegal gains which inured to her benefit under the equitable doctrines of disgorgement, unjust enrichment and constructive trust." (*See* Ex. D, ¶ 81, 82.)

18. The SEC complaint also made no mention of any criminal indictment or arrest. (*See* Ex. D.)

19. After Claimant learned that UCR funds were used to purchase 927 Cole Street for the benefit of Marie Dalton, Claimant filed an action against Marie Dalton in Jefferson County District Court on May 12, 2011, for civil conspiracy, civil theft, conversion, unjust enrichment, and aiding and abetting a breach of fiduciary duty. (*See* Ex. A, ¶9; Ex. 11 to Pl. Mot., pp. 3-5)

20. The above-captioned civil forfeiture action was then filed on August 11, 2011, followed by a Notice of Lis Pendens on August 18, 2011, seeking forfeiture "pursuant to the civil forfeiture provisions of 18 U.S.C. § 981." (*See* Doc. 1, ¶ 1; Ex. 12 to Pl. Mot.)

21. Marie Dalton filed a Verified Claim to the defendant property on September 18, 2011, thereby maintaining she had an interest in the property that was not subject to forfeiture. (*See* Ex. E.)  Richard Dalton filed a Consent to Forfeiture on January 1, 2012. (*See* Ex. F.)

22. Richard and Marie Dalton were not criminally charged until October 19, 2011. (*See* Pl. Mot. Summ. J. ¶ 15.)

6

23. Claimant obtained a default judgment against Marie Dalton in the state court action on November 18, 2011, in the amount of $910,365.44, plus attorneys' fees, costs, and post-judgment interest. (*See* Ex. A, ¶10; Ex. 13 to Pl. Mot.)

24. Claimant recorded a transcript of judgment against 927 Cole Street on December 12, 2011. (*See* Ex. A, ¶ 10; Ex. 15 to Pl. Mot.)

25. Counsel for Claimant was first served with a copy of the civil forfeiture complaint on March 27, 2012 by a Special Agent for the United States. (*See* Ex. A, ¶ 12; Ex. G.)

26. After Claimant learned of the civil forfeiture action, he filed a Verified Claim to the defendant property in this action on April 12, 2012. (*See* Doc. 47.)

27. Thereafter, a judgment was ultimately rendered in the SEC action in February of 2012, awarding money damages and stating that the property is subject to the above-captioned matter. (*See* Ex. H, ¶ 5, 6, 7.)

28. Marie Dalton did not relinquish her claim of interest in the property until February 21, 2013, as a part of her plea agreement, though the property remains titled in her name. (*See* Ex. I.)

29. To date, no order permitting forfeiture of the defendant 927 Cole Street has been filed by this Court.

## CLAIMANT'S LISTING OF DISPUTED FACTS

30. Claimant did not have any contact with Marie Dalton during either the investment stage or later communications with Richard Dalton trying to get his investment back. (See Ex. A, ¶ 5.)

31. At no time prior or up to the date of recording his judgment lien did Claimant have any knowledge that the property was subject to forfeiture or that a civil forfeiture action had been filed. (*See* Ex. A, ¶ 11.)

## STANDARD

### *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact *and* that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added).  A fact is "material" if, under the pertinent substantive law, it is essential to the proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  When applying this standard, courts view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)(citing *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998)).  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).  "Summary judgment is an extreme remedy, one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Ozark Milling Co., Inc. v. Allied Mills, Inc.*, 480 F.2d 1014, 1015 (8th Cir. 1973).  "No margin exists for the disposition of factual issues.  If there is any issue as to a material fact dispositive of right or duty, the case is not ripe for summary judgment." *Jones v. Nelson*, 484 F.2d 1165, 1168 (10th Cir. 1973).

8

Even where the pleadings present no substantial issue of fact and the only question is the legal inferences and conclusions to be drawn therefrom, a case may properly be assessed under the rule providing for summary judgment proceedings. *Schreffler v. Bowles*, 153 F.2d 1, 5 (10th Cir. 1946). In other words, where there are no genuine issues of material fact in dispute and the issues remaining involve only questions of law, summary judgment is appropriate. *Nat'l Ins. Underwriters, by Nat. Aviation Underwriters v. Mark*, 704 F. Supp. 1033, 1034 (D. Colo. 1989)(citing *Smartt v. National Farmer's Union Property and Casualty Co.*, 605 P.2d 479 (Colo. App. 1979)). If any affirmative defenses, if proven, might possibly preclude a judgment and decree in favor of the plaintiff as a matter of law, then the motion for summary judgment must be denied. *Velsicol Corp. v. Hyman*, 103 F. Supp. 363, 366 (D. Colo. 1951) modified on reh'g sub nom. 3369, 1952 WL 81726 (D. Colo. Mar. 11, 1952).

## *Civil Forfeiture Standard*

Once the government has met its burden of proof as to property subject to forfeiture, a claimant of the property must establish either that the property is not subject to forfeiture, *or* that a defense to the forfeiture applies. *United States v. $17,538.00 in U.S. Currency*, 788 F. Supp. 509, 511 (D. Kan. 1992)(citing *United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1216–17 (10th Cir.1986) (emphasis added); *Boas v. Smith*, 786 F.2d 605, 609 (4th Cir.1986); see also *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983). "An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 USC 983(d)(1).

## ARGUMENT

I.     *Claimant meets the elements of an innocent owner in order to prevent forfeiture*

Claimant does not dispute that his interest arose after the conduct giving rise to this forfeiture action; however, he meets the elements of an "innocent owner" such that this Court cannot grant Plaintiff the relief it seeks.

"An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1).  The term "innocent owner" means a person who, at the time that person acquired the interest in the property "(i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3)(A).

### A.     Rationale for "innocent owner" status is applicable to Claimant's interest

The status of innocent owner provides an affirmative defense preventing the forfeiture of certain property, and the rationale underlying the purpose of permitting an innocent owner to avoid such forfeiture is relevant to Claimant's position.

> The principal goal of [forfeiture statutes], …, is to give owners of property an incentive to prevent the use of that property in [illegal acts].  People who are not owners at the time the act is committed are simply in no position to prevent the improper use.  Penalizing such owners would do little to accomplish the ends of those forfeiture statutes.

*United States v. 1993 Bentley Coupe*, 986 F. Supp. 893, 898 (D.N.J. 1997)(citing *United States v. One 1973 Rolls Royce*, 43 F.3d 794, 819 (3d Cir. 1994)(interpreting 21 U.S.C. § 881, but

extending same rationale to cases invoking 18 U.S.C. § 981)).  Claimant, here, was not an owner at the time of the wrongful act, and he should not be penalized, as it would do nothing to further the ends of the forfeiture statutes.

### B.      Claimant is a bona fide purchaser for value

Pursuant to applicable state law, Claimant is a bona fide purchaser for value—thereby establishing a property interest in the defendant 927 Cole Street.

The test of ownership is determined by the law of the state in which the interest arose. *United States v. 904 Toro Canyon Rd., No. CIVA04CV02549EWN-OES*, 2006 WL 36764, at *4 (D. Colo. Jan. 5, 2006); see also *United States v. 2001 Honda Accord EX VIN #1HGCG22561A035829*, 245 F. Supp. 2d 602, 608 (M.D. Pa. 2003)(citing *U.S. v. One 1973 Rolls Royce, VIN SRH–16266 By and Through Goodman*, 43 F.3d 794, 806 n. 8 (3d Cir. 1994)); *United States v. 1500 Lincoln Ave.*, 949 F.2d 73, 77 (3d Cir. 1991).  The term "owner" under Section 983 means a "person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." 18 U.S.C. § 983(d)(6)(A).

Under Colorado law a judgment lien creditor whose lien has been recorded possesses rights identical to those of a bona fide purchaser for value. *Mooring v. Brown*, 763 F.2d 386, 387 (10th Cir. 1985)(citing *Sky Harbor, Inc. v. Jenner*, 435 P.2d 894, 896 (Colo. 1968); *Wedman v. Carpenter*, 65 Colo. 63, 173 P. 57 (1918)). The judgment creditor's lien attaches not only to the actual interest of the judgment debtor, but to the judgment debtor's apparent interest, as shown by recorded documents. *Id.* (citing *Sky Harbor, Inc.*, 435 P.2d at 896).

Here, Claimant's interest and standing as a bona fide purchaser is established by Colorado state law.  The parties do not dispute that Claimant filed a judgment lien against the subject property on December 12, 2012. (*See* ¶ 24.)  Under the civil forfeiture statute, a lien constitutes ownership.  Moreover, Colorado law states that a judgment lienor possesses all rights and interests of a bona fide purchaser for value.  Claimant obtained a specific interest in the specific defendant property once he recorded the judgment; thus, his interest is not that of a general creditor.  Therefore, Claimant has established his interest as a bona fide purchaser for value.

Even if Claimant did not possess the interests of a bona fide purchaser for value under Colorado law, his interest still fits within the definition set forth by Plaintiff.  Plaintiff contends that bona fide purchasers are "all persons who give value . . . in an arm's length transaction with the expectation that they would receive equivalent value in return."  Claimant provided value in the amount of $100,000 and expected to receive equivalent value in return. (*See* ¶ 12, 13.)  His judgment lien on the defendant property equates to securing that equivalent value, and thus, he provided consideration for his interest.  Claimant is a bona fide purchaser either way.  Moreover, the case law to which Plaintiff cites either pertains to a case in which a claimant is attempting to argue bona fide purchaser status when the thing of "equivalent value" was a gift with no consideration, or it references no Colorado state law at all.  Those cases, therefore, are not analogous and inapplicable.

In sum, there are material issues of fact and law in dispute such that the Court should not grant summary judgment on the basis that Claimant is not a bona fide purchaser for value.

12

**C.    Claimant did not know and was reasonably without cause to believe that the property was subject to forfeiture**

In accordance with Section 983, Claimant did not know and was reasonably without cause to believe that the property was subject to forfeiture at the time he obtained his interest in the property.

Section 983(d)(3)(A) requires both a subjective and objectively reasonable belief that the property in dispute was not subject to forfeiture. *U.S. v.2003 Lamborghini Murcielago, 6:07CV726ORL-19KRS*, 2007 WL 4287674 (M.D. Fla. Dec. 6, 2007)(citing 18 U.S.C. § 983(d)(3)(A)).  "Nowhere does the statute require the claimant to investigate whether the property was subject to forfeiture or produce other evidence that negates the possibility of "willful blindness." *Id*.  A criminal conviction is not required before a civil forfeiture proceeding takes place, but such a proceeding "usually involves property that has been used in, or that is related to, a criminal enterprise." *United States v. $13,000.00 in U.S. Currency, 2007 Black Dodge Ram SRT Pickup, VIN 1D7HA18257S120375*, 858 F. Supp. 2d 1194, 1198 (D. Colo. 2012) (citation omitted).

Here, Claimant's interest prevents forfeiture of the property because he did not know the property was subject to forfeiture when he gained that interest. (See ¶ 31.)  An analysis of the timeline involved in this action establishes that Claimant did not know, nor should he have reasonably believed the property was subject to forfeiture.  First, the subject property in this action was purchased in July of 2009, which was four months before Claimant even became involved with Richard Dalton and UCR. (See ¶ 8.)  The home was substantially purchased with funds that were only connected to the 2007 Trading Program, not the 2009 Diamond Program in which Claimant eventually invested, and those funds were transferred in 2008, prior to

13

Claimant's initial investment. (*See* ¶¶ 4-8.)  Claimant believed the investment programs to be legitimate opportunities to earn a return on investment, which belief he maintained up until the time of retaining counsel and filing suit. (See ¶ 11.)  Furthermore, Claimant had no contact with Marie Dalton during his dealings with Richard Dalton and UCR, either during the contract negotiation process or subsequently. (*See* ¶ 30.)  Claimant's initial state court action was only filed against Richard Dalton and UCR and mainly alleged a claim of breach of contract. (*See* ¶ 14.)  Thus, he certainly had no initial knowledge that the property was the proceed of any criminal conduct or that the owner of the property had any involvement in the scheme that would subject her property to forfeiture.

Second, Claimant did become aware of the SEC action prior to filing suit against Marie Dalton; however, such action sought only civil remedies and made no reference to a civil forfeiture (or forfeiture statute), a criminal indictment, or an arrest warrant. (*See* ¶¶ 15-17.)  There was no reference to criminal acts at all.  The SEC complaint only sought disgorgement of the property from Marie Dalton as titled owner, which equated to a civil remedy, not confiscation as the result of criminal activity. (*See* ¶ 17.)  Any judgment rendered in the SEC case would, at best, have resulted in a judgment that, itself, could have been recorded against the property.  Therefore, at the time Claimant instituted the state court action against Marie Dalton, he still did not know and was reasonably without cause to know the property was subject to forfeiture. (*See* ¶ 31.)

The mere fact that the SEC complaint referenced an investment scam could not and did not put Claimant on notice the property was subject to forfeiture.  The SEC complaint, instead, appeared to lay claim to every asset that could otherwise be collected, and thus, a civil forfeiture action was rendered moot at the time Claimant pursued his claims against Marie Dalton.  Even

14

more, the SEC complaint made no reference to the fact that Marie Dalton was involved in the investment scam, had knowledge of it, or was employed by UCR. (*See* ¶17.)  Therefore, the property would not be subject to forfeiture if she was an innocent owner.[1]

Claimant commenced the state court action against Marie Dalton in May of 2011, on the basis that she received some benefit from her husband's wrongful acts. (*See* ¶ 19.)  At that time, there was no other claimed interest related or cloud on the title to the defendant property; there only existed a Notice of Lis Pendens for the SEC action. (*See* Ex. 2 to Pl. Mot.)  The SEC action, though, would not have resulted in forfeiture.  Furthermore, the final judgment in the SEC action was not rendered until February, 2012—two months after Claimant secured an interest in the property—and the final order granted a money judgment only. (*See* ¶ 27.)  Claimant neither subjectively, nor objectively knew, nor should have known the property was subject to forfeiture at the time he recorded his judgment, based on the SEC filing.

Third, the commencement of claims against Marie Dalton occurred when there was no other interest in or claim to the title, and when Claimant commenced that state court action, he intended to record his judgment in light of there being no other claims.  The civil forfeiture statute does not require a claimant to investigate whether the property is subject to forfeiture, and in fact, Claimant's knowledge at the time of pursing claims against Marie Dalton and at the time of recording his judgment lien was that the property was not subject to a civil forfeiture. (*See* ¶ 31.)  Claimant was not required to investigate whether a forfeiture action was filed after he commenced his own lawsuit.  The fact that a Notice of Lis Pendens was filed by Plaintiff does

---

[1] Marie Dalton, in fact, filed a Verified Claim to the property even after the civil forfeiture action was filed, alluding to the fact that she allegedly maintained an innocent owner status preventing forfeiture and supporting Claimant's judgment lien against her property.

not negate the fact that subjectively and objectively, Claimant did not know and was reasonably without cause to know the property was subject to forfeiture.  Therefore, Claimant's interest is not subject to forfeiture.

Fourth, Marie Dalton and Richard Dalton were not parties to any criminal action until after Claimant commenced his civil action against Marie Dalton. (*See* ¶22.)  A criminal proceeding usually involves property that has been used in, or that is related to, a criminal enterprise that would be subject to forfeiture.  As argued above, Claimant had no obligation to affirmatively investigate any criminal indictment, and as there was none at the time he pursued those state court claims, he had no reason to subjectively or objectively know of the criminal charges or property being subject to forfeiture at the time he obtained his interest.  Richard and Marie Dalton plead guilty in February of this year, and only at that time did Marie Dalton relinquish any claim to the property that would prevent the forfeiture. (See ¶¶ 3, 28.)  Marie Dalton's consent to forfeiture, however, came over a year after Claimant obtained his interest in the property.

Claimant did not learn of the forfeiture action or property being subject to forfeiture until March, 2012. (See ¶ 25.)  The fact that he did not file a Verified Claim in this action until April 12, 2012, provides support for the fact that he was not aware the property was subject to forfeiture.

In sum, the evidence of Claimant, as the non-moving party, is to be believed, and all justifiable inferences are to be drawn in his favor.  Given this standard, issues of material fact and law exist to support Claimant's lack of subjective and objective knowledge in this case such that the Court should not grant Plaintiff summary judgment on its claim for forfeiture of the subject property.

16

**D.     Claimant's interest is not subordinate to Plaintiff's**

Claimant's actual interest in the property is not subordinate to the Notice of Lis Pendens filed by Plaintiff.

The intended purpose for filing a notice of lis pendens is to *provide notice* to anyone who may acquire an interest in the property during the pendency of the litigation so that he or she will be bound by its outcome. *James H. Moore & Associates Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994)(emphasis).  Hence, one who acquires an interest in property, which is subject to a claim in litigation, takes the interest purchased subject to such claim *as finally determined*. *Id*. (emphasis added.)

Here, Plaintiff's Notice of Lis Pendens does not vest it with an interest in the subject property; it merely provides notice (that Claimant received only in March, 2012) that any subsequent interest may be affected by the outcome of that litigation.  Plaintiff argues that, even if Claimant can establish an interest in the subject property as an innocent owner, his interest is subordinate to that of Plaintiff's.  Plaintiff's interest, however, is only secured or vested at such time as the Court renders a judgment in its favor.  Plaintiff cannot obtain such a judgment if Claimant's interest prevents forfeiture.

Viewing Plaintiff's argument from a different perspective, Plaintiff would not have been entitled to a judgment in its favor had Marie Dalton established that she was an innocent owner. Therefore, Plaintiff never would have obtained a vested interest in the property at all.  The same rationale underlies Claimant's position.  The innocent owner defense is just that—a defense to forfeiture.  His innocent owner status prevents forfeiture altogether (unless subject to a lien, as set forth below, *infra* Section II.), and Plaintiff has no true interest at this time.  In fact, Plaintiff

cannot obtain an interest until a final determination is made in this case.  Until a judgment is rendered in favor of Plaintiff, there is no outcome and no interest is subject to it.  Plaintiff cannot obtain that final determination in light of Claimant's interest, which prevents forfeiture or a final judgment in favor of Plaintiff.  Thus, Claimant's interest is not subordinate to Plaintiff's.

### E.        Equity favors Claimant's innocent owner status

Plaintiff argues in a footnote that equity does not favor finding for Claimant on his innocent owner status as it only serves to place him ahead of other investors.  This argument lacks merit, as equity actually favors Claimant.  Claimant took affirmative steps to protect his legal interests and obtain a remedy for the wrong done to him.  He should not be punished for the fact that he took those steps, without any knowledge of the criminal action or civil forfeiture action, to obtain an interest by way of a judgment lien properly obtained through the state district court.

In addition, Claimant is not seeking recovery of the entire $910,000 judgment, which would amount to other investors receiving no benefit at all.  Claimant merely seeks recovery of the amount of his investment to which he is entitled as an innocent owner of the property. Therefore, equity—paired with Claimant's lack of knowledge or involvement in the wrongful conduct—favors denying Plaintiff's Motion for Summary Judgment.

## II.        *Claimant is entitled to a lien to protect his interest in the property*

In light of the fact that Claimant is not seeking recovery of the entire value of the subject property, he is entitled to a lien in order to protect his superior interest while permitting the sale of the property.  If the court determines that an innocent owner has a partial interest in property

otherwise subject to forfeiture, "…the court may enter an appropriate order permitting the innocent owner to retain the property subject to a lien in favor of the Government to the extent of the forfeitable interest in the property." 18 U.S.C. § 983(d)(5).

## CONCLUSION

Claimant does not dispute that Plaintiff met its burden to prove by a preponderance of the evidence that the property is *subject* to forfeiture; however, Claimant has also met his burden to establish the defense of innocent owner status such that Plaintiff is not entitled to summary judgment.  At worst, there are disputed issues of material fact and the application of the law that prevent summary judgment.  Claimant, therefore, requests this Court deny Plaintiff's Motion for Summary Judgment.

Respectfully submitted this 18th day of November, 2013.

OGBORN MIHM, LLP

*/s/ Nicole M. Quintana*

_____
Murray Ogborn, Atty. Reg. No. 14508
Nicole M. Quintana, Atty. Reg. No. 42675
1700 Broadway, Suite 1900
Denver, Colorado 80290
Phone: (303) 592-5900
Facsimile: (303) 592-5910
*Attorneys for Claimant George Magnani*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a correct copy of the foregoing was served on the following via CM/ECF and/or regular, U.S. mail, postage prepaid on this 18th day of November, 2013.

Tonya Andrews
Special Attorneys for the U.S. Attorney's Office
1225 17th Street, Suite 700
Denver, Colorado 80202
tonya.andrews@usdoj.gov

/s/ Nicole M. Quintana
_____

Nicole M. Quintana