## INVESTMENT STRUCTURE AGREEMENT

This Investment Structure Agreement (sometimes hereinafter referred to as the "Agreement") is made as of the 12th day of November, *2009* by and between:

### Investment Management:

***Universal Consulting Resources, LLC*** (Hereinafter referred to as "*UCR*")
927 Cole St
Golden CO 80401
A corporation registered in the state of New Mexico, herein represented by:

Richard D. Dalton, Director of Finance

### Investor:
George Magnani
6859 Shoshone Ave
Van Nuys CA 91406

Hereinafter referred to as "INVESTOR", who is domiciled in California

### Naming Conventions:

These Naming Conventions are actively incorporated herein as the legal binding meaning it represents and expresses within any part herein of this Agreement and it is not to be interpreted as an educational glossary.

Financial Instruments: Include but are not limited to any legal and acceptable cash currency or cash in banks, stocks, bonds, options, futures, precious stones, precious metals and Margin Capacity.

Margin Capacity: This is the value assessed on Financial Instruments, Securities, Debt Instruments and other commodities by international standards for the purposes of lending monies against said Financial Instrument at a certain Loan-To-Value (LTV). This LTV ratio will vary upon the evaluation or risk assessment of each institution. The Margin Value is expressed in an average of said assessment of at least two financial institutions.

Debt Instruments: Medium Term Notes (MTN), Bank Guarantees (BG), Stand-By-Letter-Credit (SBLC), and other Negotiable Bank Instruments.

Securities: Stocks, Bonds, Treasuries, Commercial Paper, U.S. Treasuries and other highly marketable and tradable financial paper.

_____   11/11/09            _____   11-12-09
UCR, LLC AGENT        MO/DAY/YR                    INVESTOR         MO/DAY/YR

**EXHIBIT B**

Legal Funds: Any legal and acceptable tender as currency, Financial Instruments which are free and clear of any lien, tax liability, criminal or otherwise illegal precedent, which are legally owned or obtained as acceptable per the rules governing "Money Laundering and Anti-Terrorism" activities pursuant to Articles 2 of the Banking Commission and the Patriot Act of the USA as to the origin of funds.

Accredited Investor: Is an entity or an Individual as defined by Rule 501 of Regulation D of the Security and Exchange Commission of the USA.

Investment Company: Is an Accredited Investor entity that is investing its own funds and that of Clients. In such cases when an Investor herein is investing funds on behalf of clients, then said Investor has undertaken the same Fiduciary responsibilities and qualifications required as a Syndicating Firm and has properly engaged and disclosed the risks on these transactions to other Investors and Clients.

Investor: Is an Accredited Investor (entity or individual) who limits its participation on this Agreement to invest its money at the guidance and under the Fiduciary responsibility of the Investor, Syndicating Firm, and Financial or Legal Advisor. Monies could be directly invested or placed in an Investment Pool for which a Pro-Rata shares distribution of its invested capital will be disbursed from Net-Profits.

Syndicating Firm: Is an Investment Company that aggregates an investment pool of Accredited Investors for a specific venture and represents them, making direct decisions on their behalf.

Said Syndicating Firm must comply in providing its Investors all disclosures inclusive of risks, offering memorandums and be in good standing with any and all regional, federal and international regulations and licenses that are required by law for any specific venture or offering.

The firm must be fully compliant with regulations on solicitation and provide additional services which include but are not limited to: negotiate, disclose, review and the oversight management of all transactions. Additionally, said Syndicating Firm must hire Third Party Service or investment advisers and legal representation to protect the best interest of its Clients and the Parties who might directly or indirectly invest funds.

Profit Participants: Are any entity or individual who, by the virtue of the services they provide in this Agreement as a service referral adviser or consultant, receives a specific compensation defined in a percentage (%). Any additional compensation and interest would come from invested funds as an Investment Participant.

Net-Profits: Are the net proceeds of monies after deductions from all expenses inclusive but not limited to transactional costs (commissions), Funds Wire, SWIFT and other similar services in addition to approved Business Class services under FEES herein.

Parties: The "Parties" is herein referred to all entities and/or individuals, which are part of this Agreement other than UCR, LLC, whereas; the words "parties", "each one" or "anyone" refers to all the Agreement partners herein.

| _____ | 11/11/09 | _____ | 11-12-09 |
|---|---|---|---|
| UCR, LCC AGENT | MO/DAY/YR | INVESTOR | MO/DAY/YR |

<u>Market Price:</u>  Is the price established by security houses and banks with respect to the yield of any Financial Instrument which is sold to the retail market and funds.

<u>Credit Facility:</u>  Is the establishment of a Line-of-Credit or a series of Lines-of-Credits, Margin Accounts that consist of the Margin Value of Financial Instruments and Escrow Funds.

<u>Funds:</u>  This is the initial money deposited into The LLC Account as currency, which is further described as Legal Funds.

<u>Investor/Agent Accounts:</u>  These accounts cannot contain any Financial Instruments other than acceptable currency as Legal Funds, such as Investor's Initial Deposit and subsequent investments which are to be forwarded as required to a Trading Account for payment of investment and trade transactions. Additionally, the account will be used to receive profits from investments and for reconciliation and distribution to Investors.

<u>Trading Accounts:</u>  These accounts can hold Financial Instruments and currency. Funds remaining in these accounts are to be used for investment and trade transactions. Monies between this account and Escrow Accounts are transfer as needed for distribution of profits and as per the request of the Investor.

<u>Minimum Performance:</u>  The Parties and *UCR, LLC* have established a minimum return on Investor's funds of 20% per transaction. A transaction typically requires 20 to 25 days so that expectations are for one turn or (transaction) per month. Any returns exceeding one turn per month are subject to a best efforts basis and can be overridden by the Syndicating Firm.

<u>Account Management:</u>  *UCR, LLC* account management is re-enforced by the evaluation of top professional and licensed Third Party services in investment and trade transactions. In this regard, *UCR, LLC* views these transactions as extremely low risk of original invested capital. Although *UCR, LLC* opinion is that this investment strategy provides a low Risk Assessment we urge Investors to perform their own due-diligence and only to invest if they reach the same conclusions under professional Third Party advice.

<u>Cancellation Period:</u>  An Investor can cancel this Agreement at any time and request that all monies as principal investment and all other proceeds derived from profits be returned. Said cancellation will be pursuant to *UCR, LLC* failure to perform as per the Minimum Performance standards set forth herein. Investor's monies will be returned after completing all Investment and Trade Agreements. Escrow Agent will reconcile all Investors transactions within thirty (30) banking days from concluding all trades and Investor's returns have been transferred from the Trading Account to the Escrow Account.

### *WITNESSETH:*

The Parties agree that a binding contract is constituted by the complete execution of this agreement. However, due to Legal Funds and Accredited Investor regulatory compliance, Investor's funds cannot be accepted as a deposit into Escrow until the following documents are received and accepted:

| *signature* | 11/11/09 | | *signature* | 11-12-09 |
|---|---|---|---|---|
| UCR, LLC AGENT | MO/DAY/YR | | INVESTOR | MO/DAY/YR |

1. Investment Structure Agreement
2. Exhibit – "A", Non-Solicitation and Non-Disclosure Statement
3. Exhibit – "B", Investor's/Client Origins/Use of Funds Declaration Statement
4. Copy of Investor's Passport/Driver's License
5. Corporate Entity Investor (If not entering as an Individual)
    a. Certificate of Good Standing
    b. Articles of Incorporation
    c. List of all Directors and signatories
    d. Exhibit – "C", Corporate Resolutions
    e. Items #2-4 above for all Directors and Signatories

**ESTABLISHMENT OF ACCOUNT**

Investor hereby appoints Richard D. Dalton, the Director of Finance of *UCR, LLC* as the exclusive Agent, and said Agent hereby agrees to serve as the fiduciary agent with depositary oversight subject to the terms and conditions set forth herein.

Investor will deposit **$100,000.00 U.S. Dollars** with the UCR, LLC and its Agent. The Initial Deposit as Legal Funds and acceptable currency, together with any investment earnings thereon, shall hereinafter collectively be referred to as the "Transactional Funds". The Agent shall receive the Initial Deposit and agrees to hold said Funds in a Segregated Account established at the Agent's designated bank which is the Bank of America (the "Account") which, subject to the terms and conditions of this Agreement, will be available for disbursement to the Investor directly to the account from which the aforesaid deposit was made. The Agent shall not distribute or release any of the principal Funds except for specific Bank to Bank wire transactions that effectuate a simultaneous Buy-Sell transaction between banks; I.E., no depository funds are released by wire or any other means that are not simultaneously secured by hard assets of equal or greater value in order to complete the "Buy/Sell" transaction of Financial Instruments or other assets as set forth is this agreement..

**Investor confirms with full disclosure that the initial and all subsequent deposits thereafter are to be Legal Funds.**

_____    11/11/09                    _____    11-12-09
UCR, LLC AGENT       MO/DAY/YR                   INVESTOR             MO/DAY/YR

NOW THEREFORE, in consideration of the mutual promises contained in this Agreement, the Parties and *UCR, LLC* agree as follows:

## I. PURPOSE OF THE AGREEMENT:

The purpose of this Investment Structure Agreement shall be to enter into a Trading Agreement with various financial institutions as determined by *UCR, LLC*, to generate profits from the buying and selling of Precious Stones heretofore defined of which *UCR, LLC* will distribute returns of a minimum of 10% per transaction to the Investors. Transactions normally occur one time per month.

## II. SCOPE OF SERVICES:

In consideration of this Agreement and mutual covenants included herein, the Parties and *UCR, LLC* agree to provide the following services in connection with this Agreement, as well as any additional services, which are necessary to accomplish the objectives of the Agreement:

**A. Investors Responsibilities:** Investors must transfer/deposit liquid Legal Funds as currency with the Agent at *UCR, LLC's* designated bank which is the Bank of America, for the benefit of the Investment Structure to be exclusively managed by *UCR, LLC* as described herein.

Due to compliance with the "Money Laundering" and "Patriot Act" regulatory agencies, Investors must provide acceptable notarized originals of Exhibits "C" through Exhibit "E" regardless whether your company and/or funds are domestic or foreign. The law does not make provision for accepting the due diligence in compliance which other banking institutions (including U.S. Financial Institutions) have or may perform. **There are no exceptions.**

**B. UCR, LLC Responsibilities:** *UCR, LLC* will establish a Credit Facility by receiving Clients' Funds and Financial Instruments held in a specific and segregated transactional account at Bank of America for the purpose of trading Precious Stones and other material assets for profit.

*UCR, LLC* is to negotiate and secure Investment and Trade Agreements that provide a minimum profit margin as set by Minimum Performance for the transactions.

*UCR, LLC* will confirm via its Financial Institution and/or Brokerage House "Proof-of-Funds" or "Buying Capacity" of *UCR, LLC* on behalf of the Agreement as per the Credit Facility. Said confirmation will be via SWIFT/Fed Wire on a Bank-to-Bank basis and as needed for domestic and international Investment and Trade.

*UCR, LLC* will present opportunities and immediately execute transactions that meet the Minimum Performance.
*UCR, LLC* will have SWIFT/Fed Wire capability for said verification and payment authorization as provision by the conditions of the Escrow Account managed by *UCR, LLC*.

| _[signature]_ | 11/11/09 | _[signature]_ | 11-12-09 |
|---|---|---|---|
| UCR, LLC AGENT | MO/DAY/YR | INVESTOR | MO/DAY/YR |

**III. RECORDS AND AUDIT:** The Parties and *UCR, LLC* on behalf of the Investment Structure shall keep true, complete and accurate books and records relating to this agreement.

**IV. TERM:** This Agreement shall commence upon the date of its reciprocal execution by the parties hereto and shall be renewed in perpetuity month to month for active and continuous investment participation unless and until it is dissolved for cause by either party by written notification, or pursuant to legal action, or termination of the structured finance opportunity investment. At the termination of this agreement the parties shall dissolve this agreement. Termination as per the Cancellation Period with any one Investor(s) for any reason whatsoever or dispute does not relieve other Investor(s) from their obligations herein. Notice of Termination will have an effective grace period of 30 days and will be pursuant to Cancellation Period terms and conditions.

**V. GENERAL PROVISIONS:**

  A. Force Majeure:  Anything contained herein notwithstanding, neither party will be liable for any failure of performance beyond its reasonable control.
  B. Amendment:  This Agreement may be amended or modified in any way by an instrument in writing, stating the amendment or modification, signed by the parties hereto and attached to the end of this Agreement.
  C. Waiver:  No waiver by either party of a breach of this Agreement will operate or be construed as a waiver of any subsequent breach.
  D. Severability:  The invalidity, illegality or unenforceability of any provision of this Agreement will not affect the remainder of this Agreement, and this Agreement will be construed and reformed without such provision.
  E. Assignment:  Neither party will assign this Agreement without their mutual written consent. Any such attempted assignment will be null and void, unless at the time of the attempted assignment either party to this Agreement is purchased by another organization.
  F. Notices:  All notices, consents and other communications between the parties will be in writing and will be hand delivered, electronically sent, or sent by first class mail, postage prepaid, return receipt requested, to the address set forth for each party on the signature page hereto. Notices will be deemed delivered on the fifth (5th) business day after deposit thereof in the U.S. postal system or if by hand delivery, on the day of such delivery, or if electronically, on the day it was sent.
  G. Governing Law:  This Agreement will be governed by and construed under the laws of the State of Colorado and European Union.
  H. Time of Essence:  Time is of the essence in the performance of each and every provision of this Agreement.
  I. Independent Entities:  The Parties and *UCR, LLC* are independent entities and/or persons as individuals and neither party, nor any employee or agent of either party, will be construed to be the employee or agent of the other party.

_____   11/11/05
UCR, LLC AGENT    MO/DAY/YR

_____   11-12-09
INVESTOR    MO/DAY/YR

J. **Indemnity**: The Parties and *UCR, LLC* acknowledge that they cannot control Third Parties and Force Majeure events that may hinder their ability to perform herein as planned. As such, the Parties and *UCR, LLC* mutually indemnify, defend and compensate each other for any set liabilities as a consequence which prevented them from realizing profits, except for negligence as defined by law and breach of any Regulatory Compliance.

K. **Regulatory Compliance**: The Parties and *UCR, LLC* must strictly observe all local, regional and federal regulatory compliance for domestic or foreign transactions or operations which include but are not limited to Legal Funds, Investors and general disclosures, Accredited Investor requirements, investment syndication activities (Syndicating Firm), operating within the boundaries of its licenses, etc.

L. **Construction of Agreement**: Neither this Agreement, nor any uncertainty or ambiguity herein, will not be construed against any one party, but will be construed as if all parties to this Agreement jointly prepared this Agreement.

M. **No Third-Party Beneficiaries**: No person or entity is intended by the parties to be a third party beneficiary of this Agreement and no action may be brought to enforce the terms of this Agreement against either party by any person or entity not a party hereto.

N. **Counterparts**: This Investment Structure Agreement may be executed in any number of counterparts, each of which will be deemed an original, and all of which together will constitute one and the same instrument.

O. **Confidentiality**: The Parties and *UCR, LLC* herein shall not directly or indirectly, in any capacity, divulge or communicate to any person or entity other than each other, or use to the detriment of each other or the benefit of any other person or entity, or misuse in any other way, (i) any confidential information of the Parties and of *UCR, LLC*; (ii) any discoveries or improvements learned by any of the Parties by reason of association with each other; (iii) any and all business programs, formulas, reimbursement rates, used or developed for future use by; and (iv) the terms and provisions of any Agreement to which any one of them is a part; with the exception of any developments, modifications or improvements to *UCR, LLC* whether conceived solely by *UCR, LLC* or together with the remaining Parties. All rights, titles and interest in each shall rest exclusively with same during the term of this Agreement and thereafter.

The Parties and *UCR, LLC* acknowledge and agree that in connection with all confidential information, trade secrets and other information of each other, which it is acquired or received in confidence, it shall exercise utmost diligence to protect and guard all information mutually.

Upon termination of this Agreement, all Parties and *UCR, LLC* shall return all property and documents to each other, unless written consent from said Parties or *UCR, LLC* exists allowing them to keep the same.

Not withstanding the foregoing, the requirements of confidentiality and the limitations on use and disclosure described above shall not apply to any of the following types of confidential information:

_____  10/11/09                    _____  11-12-09
UCR, LLC AGENT   MO/DAY/YR                  INVESTOR       MO/DAY/YR

Information which can be shown by clear and convincing evidence, at the time of disclosure by any of the Parties and *UCR, LLC*, said information was known to any of the Parties and *UCR, LLC* as evidenced by written records; Information which can be shown at time of disclosure was in the public domain; Information which, after disclosure, the Parties and *UCR, LLC* can show is published or becomes publicly known or otherwise becomes part of the public domain other than as a result of a breach of obligations under this Agreement; or Information which the Parties and *UCR, LLC* can show is disclosed to any entity in good faith by a third party who is not under an obligation of confidence or secrecy to *UCR, LLC* at the time such third party discloses the information.

P. <u>Governmental Disclosure:</u>  The Parties herein disavow any affiliation directly or indirectly with any domestic or foreign country, state, regional and/or federal government entity or regulatory agency at any level as an informant or in any other capacity.

Q. <u>Dispute Resolution</u>:  Any dispute, controversy or claim arising out of or in connection with this Agreement, or the performance hereof, will be determined and settled by binding arbitration before an arbitration panel under the rules set forth by the International Arbitration Association at a site mutually agreed upon.  Any award rendered will be final and conclusive upon the parties and a judgment thereon may be entered in a court having competent jurisdiction.  The arbitrators will have no power to vary or ignore the terms of this Investment Structure Agreement, will be bound to follow controlling law and may not award any punitive or exemplary damages. The parties can conduct discovery as allowed by the rules of the International Arbitration Association.

R. <u>Entire Agreement</u>:  This Agreement, together with any Addendums hereto, constitutes the entire Agreement between the Parties and *UCR, LLC* relative to the services to be provided, and supersedes all other proposals, understandings or Agreements, whether written or oral.

## BINDING ARBITRATION

By initialing below, the Parties and *UCR, LLC* acknowledge that they have fully read and understand this provision and that they are voluntarily agreeing to binding arbitration.  In addition, the Parties and *UCR, LLC* acknowledge and understand that the binding arbitration described above deprives them of various rights that they might otherwise have in a legal action, including without limitation the right to a jury trial, the right to appeal, and the right to full discovery.

| _[signed]_ | 11/11/09 | _[signed]_ | 11-12-09 |
|---|---|---|---|
| UCR, LLC AGENT | MO/DAY/YR | INVESTOR | MO/DAY/YR |

## ACKNOWLEDGEMENTS AND DISCLOSURE WAIVERS

The Parties herein confirming that they are Accredited Investors hereby acknowledge that they have been advised by *UCR, LLC* to secure Legal Representation to review this Investment Structure Agreement. The Parties have waived all other disclosures with the full understanding of all risks. Further, they acknowledge that they have received all disclosures as required by law by their Syndicating Firm or Legal Representative. Investors not represented by Syndicating Firm or an attorney hereby waive any additional disclosure requirements on the basis of their respective business knowledge as Accredited Investor status and investment experience. As such, the Parties hereby fully indemnify *UCR, LLC* for any issues of disclosure other than as documented herein as to the Minimum Performance, Risk Assessment and Non-Depleting Account Management procedures herein.

IN WITNESS WHEREOF, the parties have executed this agreement, which will be made effective as of the 12th day of November, 2009.

**THE PARTIES AND *UCR, LLC* WILL DELIVER TWO (2) EXECUTED ORIGINALS ALONG WITH APPLICABLE CORPORATE RESOLUTION EMPOWERING THEM TO ENTER INTO THIS INVESTMENT STRUCTURE AGREEMENT, AS THE DULY AUTHORIZED LEGAL REPRESENTATIVE OF THEIR RESPECTIVE ENTITY OR AS AN INDIVIDUAL.**

**INVESTOR:**

By: _____
George Magnani

**UNIVERSAL CONSULTING RESOURCES, LLC:**

By: _____
Richard D. Dalton
Director of Finance